JEFFREY L. WILSON,

    Plaintiff,

v.

STATE OF WASHINGTON, et al.,

    Defendants.

CASE NO. C16-5366 BHS

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on Defendant Dr. Leslie Sziebert's ("Sziebert") and Washington State's ("State") motion for summary judgment. Dkt. 80. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion.

## I. BACKGROUND

On June 14, 2017, Plaintiff Jeffrey L. Wilson ("Plaintiff") filed his third amended complaint in this action. Dkt. 54. Plaintiff asserted 42 U.S.C. § 1983 claims against the State, the Department of Social and Health Services ("DSHS"), Attorney General Bob Ferguson, Sziebert, and John Does (collectively, "Defendants") arising from the length and conditions of his civil confinement at Washington's Special Commitment Center on

McNeil Island ("SCC"). *Id.* Specifically, Plaintiff alleged that he was deprived of adequate medical care while civilly committed and that it was unconstitutional to confine him for approximately 12 years without obtaining a verdict at trial. *Id.*

On June 29, 2017, Defendants moved for partial summary judgment. Dkt. 57. The Court granted the motion. Dkts. 70, 73, 77. After the motion was granted, Plaintiff's surviving claims consisted of a 42 U.S.C. § 1983 due process claim for inadequate medical treatment against Dr. Sziebert and medical negligence claims against Dr. Sziebert and his employer, the State.

On June 20, 2018, Defendants moved for summary judgment on Plaintiff's remaining claims. Dkt. 80. On July 9, 2018, Plaintiff responded. Dkt. 84. On July 13, 2018, Defendants replied. Dkt. 88.

## II. DISCUSSION

Plaintiff's only remaining claims before the Court are (1) a 42 U.S.C. § 1983 claim against Dr. Sziezbert for allegedly providing inadequate medical care to Plaintiff, and (2) a medical negligence claim against Dr. Sziebert and the State as his employer. Defendants have moved for summary judgment on both claims.

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

(1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial—e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

Defendant moves for summary judgment on Plaintiff's due process and negligence claims against Dr. Sziebert on three grounds. First, Defendants argue that Plaintiff lacks

any evidence indicating that his treatment deviated from an acceptable exercise of professional judgment or fell below the applicable standard of care. Second, Defendants argue that Plaintiff has failed to show that Dr. Sziebert personally participated in causing any alleged harm to Plaintiff. Finally, Defendants argue that Dr. Sziebert is entitled to qualified immunity for any alleged constitutional violation. The Court finds that Defendants prevail on their first argument, and therefore the Court need not consider arguments on Dr. Sziebert's personal participation or qualified immunity.

In the context of civil confinement, Plaintiff's right to constitutionally adequate medical care and conditions of confinement is protected by the substantive component of the Due Process Clause. *Youngberg v. Romeo*, 457 U.S. 307, 315 (1982). "A civil detainee . . . is entitled to conditions of confinement that are not punitive." *Jones v. Blanas*, 393 F.3d 918, 933 (9th Cir. 2004). Accordingly, Plaintiff is "entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish," but officials need only ensure that "professional judgment" was exercised. *Youngberg*, 457 U.S. 322–23. Under this standard, a "decision, if made by a professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id.* at 323. "This standard has been referred to as the '*Youngberg* professional judgment standard.'" *Mitchell v. Washington*, 818 F.3d 436, 443 (9th Cir. 2016) (quoting *Ammons v. Wash. Dep't. of Soc. & Health Servs.*, 648 F.3d 1020, 1027 (9th Cir. 2011)).

In a similar vein, medical negligence claims in Washington State require that a plaintiff prove the health care provider caused him injury by "fail[ing] to exercise that degree of care, skill, and learning expected of a reasonably prudent health care provider at that time in the profession or class to which he or she belongs." RCW 7.70.040(1). The plaintiff also must prove proximate cause. RCW 7.70.040(2). "The applicable standard of care and proximate causation generally must be established by expert testimony." *Grove v. PeaceHealth St. Joseph Hosp.*, 182 Wn.2d 136, 144 (2014) (citation omitted).

The Court agrees with Defendants that Plaintiff has failed to present any evidence to create a genuine dispute over whether the treatment Plaintiff received while civilly committed constituted a substantial departure from accepted professional judgment. Plaintiff's arguments in favor of his claims are predicated on three theories that: (1) Plaintiff did not receive adequate dental care, (2) Dr. Sziebert failed to treat Plaintiff's back pain by providing access to a specialist, and (3) the purportedly high dosages of Neurontin with which Plaintiff's chronic pain was treated resulted in pancreatitis. Plaintiff's claims that he was subjected to improper dental care are supported only by his own statement that in 2006, he was informed that he had one deep cavity and that, as a result, all of his upper teeth were unnecessarily removed and he was given dentures. Dkt. 86 at 3. The medical decision was made by a professional and is presumptively valid. *Youngberg*, 457 U.S. 323. Plaintiff has failed to submit any evidence from a medical professional or some other similarly qualified person or source to indicate that this was not an acceptable exercise of professional judgment in light of Plaintiff's dental issues. Thus, similar to the plaintiff in *Mitchell*, Plaintiff "has failed to present evidence

sufficient to rebut the *Youngberg* professional judgment standard." *Mitchell*, 818 F.3d at 443.

Furthermore, Plaintiff asserts that he should have been transported out of the SCC to consult a dentist. Although Plaintiff declares that he suffered from subsequent dental pain, his own statements acknowledge that he received evaluations from medical staff regarding his dental needs. Dkt. 86 at 3. Other than his vague assertions of dental pain, Plaintiff has not submitted any evidence showing that his condition required attention from a dentist or that the evaluations he received fell short of acceptable professional care. *See id.* On the other hand, Defendants have submitted thorough evidence regarding Plaintiff's dental treatment indicating that Plaintiff's condition was in fact evaluated by multiple dentists, all of whom concluded that Plaintiff suffered from severe perio, and that the extractions Plaintiff received were the recommended and necessary course of treatment. Dkt. 82-1 at 21–46. In light of the record, Plaintiff has failed to rebut the presumptively valid decision to remove his teeth and provide dentures.

Regarding Plaintiff's assertions that Dr. Sziebert refused to send Plaintiff out of the SCC to see a specialist, Plaintiff has similarly failed to present any evidence of decisions that fell below accepted professional standards. Plaintiff declares that, according to Dr. Sziebert, a neurologist and an orthopedic specialist were necessary to adequately treat his type of pain and his back-related troubles. Dkt. 86 at 4. Medical records also indicate that there was some effort on the part of Dr. Sziebert to secure treatment from an orthopedic specialist and a physiatrist, which suggests that such treatment constituted a course of treatment that was needed. Dkt. 82-1 at 59, 60. Plaintiff,

however, has failed to cite any evidence other than his own testimony that it was recommended that he be treated by a specialist prior to 2013. In fact, the first mentions of a specialist in the medical records appear to have occurred in February 2013, shortly before Plaintiff's release on April 19, 2013. *See* Dkt. 85-3. The medical records further reveal that Dr. Sziebert attempted to secure treatment from a specialist, that the search for a provider was difficult, and that a specialist that Dr. Sziebert had eventually located withdrew his agreement to treat Plaintiff and several of his peers at the SCC. *Id.*; Dkt. 85-9. Thus, Plaintiff has failed to submit any evidence that Dr. Sziebert's efforts to secure a specialist to treat Plaintiff fell below any applicable standard of medical care or constituted a deviation from an acceptable exercise professional judgment.

Finally, Plaintiff has failed to submit sufficient evidence to support his assertions that Dr. Sziebert's decisions fell below professional standards when he prescribed high dosages of Neurontin while failing to adequately monitor for pancreatitis. Plaintiff asserts that he has learned that the manufacturer of Neurontin warns doctors to watch for pancreatitis, which Plaintiff subsequently developed after his Neurontin treatment. Dkt. 86 at 4. Plaintiff has also submitted the testimony of Dr. John Wilson, Plaintiff's brother, stating that prescribers of Neurontin should carefully monitor the patient to avoid untoward reactions, such as the rare adverse reaction of pancreatitis. Dkt. 87 at 2 ("Pancreatitis is an uncommon serious adverse reaction occurring in less than one percent of patients."). Additionally, Dr. Wilson declares that Plaintiff's development of pancreatitis is consistent with drug-induced pancreatitis and that, while other causes may be entertained, the most likely cause of Plaintiff's pancreatitis is the use of Neurontin. *Id.*

Dr. Wilson concludes that "had [Dr. Sziebert] been more astute to pancreatitis potential, the drug would have been (and should have been) immediately discontinued." *Id.* Although Dr. Wilson testifies that Plaintiff's use of Neurontin should have been discontinued *if* the risk of pancreatitis was being been more closely monitored, he fails to offer any testimony that Dr. Sziebert's monitoring of pancreatitis risk fell below an acceptable standard of medical care. *Id.* Nor does he state that Plaintiff's treatment through Neurontin constituted a substantial departure from an accepted exercise of professional judgment. *Id.* (Plaintiff dosage was 3,200 mg/day whereas 3,600 mg/day "has been tolearated"). In fact, all the evidence on the record, including Dr. Wilson's declaration, indicate that Dr. Sziebert's prescription of Neurontin is usually a safe and accepted treatment for Plaintiff's neuropathy. *Id.* In short, while Dr. Wilson's declaration indicates that better medical treatment could have prevented Plaintiff from developing pancreatitis, his testimony fails to create a question of fact that the care Plaintiff received fell below an applicable standard of care or deviated from an acceptable exercise of professional judgment. Absent any qualified testimony that Dr. Sziebert's or his medical staff's treatment of Plaintiff actually fell below the standard of care by not more closely monitoring Plaintiff's risk or diagnosing him with pancreatitis, Plaintiff has failed to produce evidence that could support a finding of negligence or a due process violation on this theory of recovery.

    Based on the foregoing analysis, the Court concludes that Plaintiff has failed to submit evidence supporting a theory that his treatment at the SCC violated the due

process clause or that he suffered from medical negligence at the hands of Defendants. Accordingly, the Court must enter summary judgment in Defendants' favor.

### III.  ORDER

Therefore, it is hereby **ORDERED** that Defendants' motion for summary judgment (Dkt. 80) is **GRANTED**. The Clerk shall enter a **JUDGMENT** in favor of Defendants and close the case.

Dated this 21st day of August, 2018.

BENJAMIN H. SETTLE
United States District Judge